DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, James Taylor, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On May 14, 2005 at approximately 11:30 p.m., Harold Hollingsworth was walking down Edwards Avenue in Akron, Ohio when two men approached him. One of the men put a gun to his head and demanded that he give them all his money. The other man remained on a bike nearby. Mr. Hollingsworth told the men that he did not have any money and that they should rob someone "who has some money." One of the men, later identified as Appellant, began digging into Mr. Hollingsworth's pockets with one hand while he held the gun to Mr. Hollingsworth's head with the other. Appellant took $6.45 from Mr. Hollingsworth. Mr. Hollingsworth then fled the scene. While fleeing the attackers, Mr. Hollingsworth heard Appellant shout that he knew Mr. Hollingsworth had more money. Appellant then threatened to fire his gun. Once Mr. Hollingsworth reached his home he called the police.
 {¶ 3} At approximately midnight on May 14, 2005, Anthony Watson was riding his bike to his home at 116 East North Street in Akron, Ohio. Upon reaching his front porch, Mr. Watson was accosted by three men. The men drew pistols and instructed Mr. Watson to give them all his money. Thereafter, the men searched Mr. Watson's pockets and backpack and took $40.00 from him. As the men fled the scene, one of them dropped his own bike and rode off on Mr. Watson's bike. Mr. Watson immediately called the police.
 {¶ 4} Officer James Gilbride, a patrol officer with the Akron Police Department ("APD"), responded to Mr. Watson's phone call. Upon arrival at Mr. Watson's apartment, Mr. Watson provided Officer Gilbride with an account of the robbery as well as a description of the assailants. Around this time, Officer James Rea, also an officer with the APD, was dispatched to Charles Street near the Y-bridge. Upon arrival, Officer Rea encountered Appellant who was in the custody of another officer. The other officer (not identified at trial) had arrested Appellant for possession of cocaine. Appellant had $30.86 in his pocket at the time of the arrest. Officer Donahue, a patrol officer with the APD, was also dispatched to Mr. Watson's home on May 15, 2005. Shortly after Officer Donahue arrived at Mr. Watson's home he transported him to Charles Street where officers were detaining Appellant. Upon observing Appellant in person, Mr. Watson identified him as one of the robbers.
 {¶ 5} At 2:00 or 2:30 a.m., police asked Mr. Hollingsworth to come down to the station. Once there, a detective showed him two photo arrays each containing six photographs and asked him whether he could identify any of the men pictured. Mr. Hollingsworth selected a photo of Appellant as the man who put the gun to his head and robbed him. He also selected Demar Dawson, Appellant's co-defendant, as the individual who remained on the bike during the robbery. Mr. Hollingsworth then signed the back of the photograph. Mr. Watson was also called to the police station in the early morning hours of May 15, 2005. A detective showed Mr. Watson three photo arrays and he also selected Appellant as one of the people who robbed him.
 {¶ 6} Appellant was indicted on five counts of aggravated robbery in violation of R.C. 2911.02(A)(1), a felony of the first degree, with firearm specifications. In addition, Appellant was indicted on one count of kidnapping in violation of R.C.2905.01(A)(2), with a firearm specification and one count of possession of cocaine in violation of R.C. 2925.11(A), a felony of the fifth degree. Mr. Dawson was also indicted on five counts of aggravated robbery in violation of R.C. 2911.02(A)(1), a felony of the first degree, with firearm specifications.
 {¶ 7} Appellant pled not guilty to all the charges. Seven days before trial, Appellant filed a notice of alibi listing six people as witnesses prepared to testify that Appellant was in their presence during the evening of May 14-15, 2005. The State then moved to exclude all Appellant's alibi evidence. Prior to trial, the State dismissed four counts. The trial court then granted Appellant's motion to exclude evidence of Appellant's alibi. Thereafter, the trial proceeded against Appellant and Mr. Dawson on two counts of aggravated robbery with firearm specifications and against only Appellant on one count of possession of cocaine. Mr. Dawson made a Crim.R. 29 motion on both aggravated robbery counts at the close of the State's evidence. The trial court granted Mr. Dawson's motion and directed a verdict in his favor on both the aggravated robbery charges. The jury returned a guilty verdict against Appellant on all three counts.
 {¶ 8} On August 16, 2005, the trial court sentenced Appellant to four years incarceration on the aggravated robbery counts and three years incarceration on the firearm specifications. The trial court ordered that these sentences be served consecutively for a total sentence of seven years. Appellant has timely appealed his convictions, raising three assignments of error for our review.
 II. ASSIGNMENT OF ERROR I
"[APPELLANT'S] RIGHT TO A FAIR TRIAL WAS VIOLATED, REQUIRING REVERSAL OF HIS CONVICTION, WHEN THE TRIAL COURT GRANTED THE STATE'S MOTION TO EXCLUDE EVIDENCE OF [APPELLANT'S] ALIBI."
 {¶ 9} In his first assignment of error, Appellant contends that the trial court erred in granting the State's motion to exclude evidence of Appellant's alibi. We disagree.
 {¶ 10} We review a trial court's decision to exclude alibi testimony under an abuse of discretion standard. See State v.Johnson (July 20, 1994), 9th Dist. No. 93CA005627, at *1. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 11} Crim.R. 12.1 states:
"Whenever a defendant in a criminal case proposes to offer testimony to establish an alibi on his behalf, he shall, not less than seven days before trial, file and serve upon the prosecuting attorney a notice in writing of his intention to claim alibi.The notice shall include specific information as to the place atwhich the defendant claims to have been at the time of thealleged offense. If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant for the purpose of proving such alibi, unless the court determines that in the interest of justice such evidence should be admitted." (Emphasis added.)
Alibi testimony should not be excluded "where no prejudice would accrue to the prosecution, where there is a demonstrable and excusable showing of mere negligence, or where there is good cause shown." State v. Smith (1985), 17 Ohio St.3d 98, paragraph two of the syllabus.
 {¶ 12} Appellant contends that the trial court erred in granting the motion to exclude his alibi evidence because (1) the State did not contact his attorney to obtain additional information regarding his alibi, (2) on the night of his arrest, he informed officers that he had been at his grandmothers' home when the crimes were committed and provided the officers with her address and (3) at the time he filed his notice of alibi, the State had not specified the date when the offenses occurred. We find no merit in these contentions.
 {¶ 13} Crim.R. 12.1 specifically places the burden on the defendant to provide "specific information as to the place at which the defendant claims to have been at the time of the alleged offense." As Appellant had the burden of providing this information, the State consequently had no obligation to contact Appellant's attorney to obtain this information. Further, although Appellant alleges that he informed officers of his whereabouts at the time the crimes were committed, he failed to include this information in his notice of alibi and further, provides no citation to the record to support this claim. Appellant's claim that the State failed to specify the date on which the offenses occurred clearly lacks merit as the date is specified in the indictment.
 {¶ 14} Upon review of Appellant's notice of alibi and arguments at the hearing on this motion, we find that the trial court did not abuse its discretion by excluding this alibi testimony. In Appellant's notice of alibi, he stated that "he was at a location other than the locations of the various alleged offense" but did not state a specific location and/or address. During the hearing on the State's motion to exclude this alibi evidence, Appellant again failed to provide any specific information regarding his location at the time the offenses were committed.
 {¶ 15} This Court has held that a trial court does not abuse its discretion by refusing to permit the introduction of alibi evidence where the defendant does not identify his whereabouts at the time the offense was committed. State v. Russell (1985),26 Ohio App.3d 185, 187. Here, Appellant failed to identity the address and/or location where he claims to have been during the commission of the crimes. As Appellant failed to meet his burden, we find no error in the trial court's decision to exclude his alibi testimony. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"[APPELLANT'S] DUE PROCESS RIGHTS WERE VIOLATED WHEN HE WAS IDENTIFIED BY AN EYEWITNESS FOLLOWING AN IMPERMISSBLY SUGGESTIVE PHOTO ARRAY, REQUIRING REVERSAL OF HIS CONVICTION."
 {¶ 16} In his second assignment of error, Appellant contends that his rights to due process were violated because the victims' identifications of him were the result of an unduly suggestive photo array.
 {¶ 17} Crim.R. 12(C) provides a pre-trial vehicle for a criminal defendant to move the court to suppress evidence. However, pursuant to Crim.R. 12(H), the failure to file a motion to suppress prior to trial constitutes waiver of any objection to the admissibility of this evidence. Here, Appellant failed to move to suppress the victims' (Mr. Watson and Mr. Hollingsworth's) identifications based on the photo array prior to trial. However, where sufficient grounds for suppression arise during trial, the court may consider a motion to suppress raised during trial. See State v. Anderson (Jan. 31, 1990), 9th Dist. No. 14183, at *2. The record reflects that Appellant failed to object to the identification testimony during trial. By failing to move to suppress the identification testimony prior to trial or at trial, Appellant has waived all but plain error. See Crim.R. 52(B). As Appellant has failed to allege plain error, we decline to address it. Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
"THE TRIAL COURT ERRED WHEN IT DENIED [APPELLANT'S] MOTION FOR ACQUITTAL."
 {¶ 18} In his third assignment of error, Appellant contends that the trial court erred in denying his motion for acquittal. Appellant further contends that the evidence was insufficient to sustain his convictions and that the convictions were not supported by the manifest weight of the evidence.
 {¶ 19} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
 {¶ 20} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
"[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
Therefore, we will address Appellant's claim that his convictions were against the manifest weight of the evidence first, as it is dispositive of his claim of insufficiency and consequently, his Criminal Rule 29 claim.
 {¶ 21} When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 22} Appellant was convicted of two counts of aggravated robbery with a gun specification,[1] in violation of R.C.2911.01(A)(1) which provides:
"No person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall do any of the following:
"Have a deadly weapon on or about the offender's person or under the offender's control[.]"
 {¶ 23} At trial, the State presented several witnesses on its behalf including both robbery victims. Mr. Hollingsworth testified as follows. On the night in question, Appellant ran up to him as he was walking down the street and put a gun to his head, demanding that Mr. Hollingsworth give him all his money. When Mr. Hollingsworth told Appellant that he did not have any money, Appellant began rifling through Mr. Hollingsworth's pant pockets in search of money. Mr. Hollingsworth had money in the left pocket of his pants and Appellant ripped that pocket in an attempt to obtain his money. Appellant stole all the money Mr. Hollingsworth had on his person at the time, which amounted to approximately $6.45. Mr. Hollingsworth described the conversation he had with Appellant during the robbery in detail. He testified that he specifically viewed Appellant's gun because he was pushing the gun away from his head while Appellant kept his finger on the trigger. Mr. Hollingsworth identified the gun as a black 9mm.
 {¶ 24} When the police arrived at his house, he gave them a specific description of Appellant including his facial features. Later that night, Mr. Hollingsworth selected Appellant from the photo arrays as the individual that held a gun to his head and robbed him. He did not know that other people had identified Appellant and Mr. Dawson as the perpetrators until he turned their pictures over to sign his name. He also made an in-court identification of Appellant and Mr. Dawson.
 {¶ 25} Mr. Watson testified as follows. He was riding his bike to his apartment on May 15, 2005 at approximately midnight. When he reached his front porch, three men ran up to him and one man, later identified as Appellant, pulled a pistol on him and demanded that he give them all his money. He then dropped to the ground. Because he dropped to the ground, he could not see Appellant's facial features. He testified that the perpetrators then went through his pockets and backpack and took all the money they found.
 {¶ 26} Both Officer Donahue and Mr. Watson testified that Mr. Watson identified Appellant as one of the assailants when Officer Donahue brought him to Charles Street where officers were detaining Appellant. In addition, Mr. Watson identified Appellant from the photo arrays and made an in-court identification of Appellant. At trial, Mr. Watson testified that he could not clearly recognize the perpetrators because he was nervous during the attack. However, Mr. Watson further testified that Appellant's brother visited him prior to trial and told him that if his brother actually robbed him, he would give Mr. Watson the money back. On cross-examination, he testified that the men he identified from the photo array were not actually the men that robbed him and that he selected them because the officers told him to pick someone and sign his name on the back of the photo.
 {¶ 27} In addition to Mr. Hollingsworth and Mr. Watson, several officers testified on behalf of the State. Most notably, Officer Rea testified that when Appellant was arrested, officers found $30.86 in his pocket as well as crack cocaine. Appellant did not testify and presented no witnesses on his behalf.
 {¶ 28} Appellant contends that his convictions were against the manifest weight of the evidence because the victims' identifications of him from the photo arrays were unreliable and should not have been admitted. In addition, Appellant argues that Mr. Watson's pretrial identification of him was inherently unreliable because he was unable to identify either of the assailants at trial. In support of this contention, Appellant points to the trial court's acquittal of Mr. Dawson based on Mr. Watson's trial testimony that the men he identified from the photo array were not actually the men that robbed him. Appellant reasons that his convictions were not supported by the manifest weight of the evidence because Mr. Watson testified that Appellant was not one of the men who robbed him. However, Mr. Watson's inability to identify Mr. Dawson at trial was only one of the reasons Mr. Dawson was acquitted. The trial court also relied on testimony from Mr. Hollingsworth that Mr. Dawson did not have a gun and did not say or do anything during the robbery.
 {¶ 29} Although Appellant failed to preserve his challenge to the admissibility of the photo array, we must nonetheless examine the testimony regarding the photo array in reviewing his manifest weight challenge as we are required to review the entire record and weigh the evidence presented at trial. See Otten,33 Ohio App.3d at 340.
 {¶ 30} Appellant contests the victims' identifications, asserting that the photo array was unduly suggestive because the signatures of preceding witnesses could be seen through the photos if a witness lifted the photo off the table to view it. Appellant also contends that the identifications were unreliable because they were made in the early morning hours, when the victims were trying to stay awake while they waited to view the photo array.
 {¶ 31} However, Appellant ignores testimony given by Mr. Hollingsworth. Mr. Hollingsworth testified that he did not notice that there were multiple signatures on Appellant's photo when he selected it from among twelve photos. Mr. Hollingsworth further testified that he did not detect that the writing showed through the photo. On the night in question, Mr. Watson identified Appellant after reviewing thirty-six photos. No one asked Mr. Watson whether he had noticed the signatures on the back of the photos and he made no comment regarding the signatures.
 {¶ 32} Upon thorough review of the record, we find that Appellant's convictions are supported by sufficient direct and circumstantial evidence. In light of the evidence presented by the State, the jury could have reasonably determined that Appellant robbed Mr. Hollingsworth and Mr. Watson at gun point. Mr. Hollingsworth (1) described Appellant to officers on the night in question, (2) identified Appellant from the photo array and (3) identified him during trial. His identifications of Appellant are further strengthened by his testimony that he observed Appellant's face from a close range. On the night of the robberies, Mr. Watson identified Appellant (1) through a description to the officers, (2) in person and (3) from the photo array. Moreover, when officers arrested Appellant, they found crack cocaine and $30.86 in his pockets. The $30.86 found on Appellant is only about ten dollars less than the amount reportedly stolen from Mr. Hollingsworth and Mr. Watson.
 {¶ 33} Mr. Hollingsworth's identifications of Appellant did not waiver. Although Mr. Watson's trial testimony contradicted his previous identifications, this conflicting evidence does not warrant reversal. We will not disturb the trial court's determinations regarding the witnesses' credibility as "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The trier of fact was in the best position to judge the credibility of the witnesses and found that Appellant committed the charged offenses. Moreover, "in reaching its verdict, the jury is free to believe, all, part, or none of the testimony of each witness." Prince v. Jordan, 9th Dist. No. 04CA008423,2004-Ohio-7184, at ¶ 35, citing State v. Jackson (1993),86 Ohio App.3d 29, 33. Appellant's convictions were not against the manifest weight because the jury chose to believe Mr. Watson's prior identifications of Appellant over his trial testimony. The jury could have reasonably concluded that Mr. Watson recanted his earlier identifications of Appellant as a result of his "conversation" with Appellant's brother prior to trial.
 {¶ 34} We therefore find that the jury determination that Appellant robbed Mr. Hollingsworth and Mr. Watson at gun point did not create such a manifest miscarriage of justice that this Court must reverse the judgment of the trial court and order that a new trial be held. As this Court has disposed of Appellant's challenge to the weight of the evidence, we similarly dispose of his challenge to its sufficiency. Roberts, supra, at *2. Necessarily included in this court's determination that the jury verdict was not against the manifest weight of the evidence, is a determination that the evidence was also sufficient to support the conviction. Id. Accordingly, Appellant's third assignment of error is overruled.
 III. {¶ 35} Appellant's three assignments of error are overruled, and the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Carr, J. concurs.
 Slaby, P.J. concurs in judgment only.
[1] Appellant was also convicted of one count of possession of cocaine. However, he has not specifically challenged this conviction on appeal. Moreover, Appellant's Crim.R. 29 motion pertained only to the robbery and gun specification charges. Therefore, we decline to review his conviction for possession of cocaine.