OPINION
{¶ 1} Appellant, Annette Ellington, was convicted after a jury trial in the Dayton Municipal Court of cruelty against a companion animal, in violation of R.C. 959.131(B). Ellington was sentenced to 180 days in jail, of which 179 days were suspended; ordered to pay a fine of $1000.00, which also was suspended, plus court costs; placed on *Page 2 
supervised probation for two years; and ordered to attend an animal awareness program and complete 100 hours of community service at a dog facility.
 {¶ 2} Ellington filed a timely notice of appeal, raising the following single assignment of error for review:
 {¶ 3} "MS. ELLINGTON'S CONSTITUTIONAL RIGHTS WERE VIOLATED WHEN THE TRIAL COURT IMPROPERLY ORDERED ALIBI EVIDENCE BE EXCLUDED AT TRIAL EVEN THOUGH THE NOTICE OF ALIBI WAS FILED THREE DAYS BEFORE TRIAL AND THE SOLE WITNESS USED TO VERIFY THE ALIBI WAS ONE THAT HAD PREVIOUSLY BEEN IDENTIFIED."
 {¶ 4} Upon considering the record, we do not find that the trial court abused its discretion in excluding Ellington's alibi evidence. Accordingly, the judgment of the trial court will be affirmed.
 {¶ 5} Ellington's conviction arose from an incident that took place on January 26, 2007. On that day, Leo Jamison arrived home from school and let his family's dogs, Coey and Zoey, out of the house and into the back yard. After approximately two hours, Jamison went to retrieve the dogs, but they were not in the yard. He testified at trial that he mistakenly left the gate in the back yard open, which allowed the dogs to leave the yard and venture around the neighborhood. Jamison immediately began to call for the dogs from the front yard. He heard barking near Appellant's residence across the street. In response to Jamison's calls, Zoey returned, but Coey remained in Appellant's yard, barking at a cat in a tree.
 {¶ 6} When Coey eventually heard Jamison call for him, he stopped barking. At the same time, Ellington came out of her house and began yelling for the dog to "get *Page 3 
the `f' off [her] yard." (Tr. at 15.) She then hurled a can of paint at the dog, which hit him and covered his body in paint. According to Jamison, he quickly grabbed the dog at this point and ran back to his house.
 {¶ 7} Thereafter, Jamison and his aunt, Connie Gardner, attempted to wash Coey with soap and water in order to remove the paint. When their attempts failed, Gardner took him to a professional grooming service, which shaved off all of the dog's fur.
 {¶ 8} To no avail, Gardner tried to discuss the incident with Appellant. Consequently, she called the police.
 {¶ 9} A complaint was subsequently filed against Ellington in the Dayton Municipal Court, charging her with cruelty against a companion animal, in violation of R.C. 959.131(B), and criminal damaging, in violation of R.C. 2909.06. Several orders were filed between March 1, 2007 and April 17, 2007, setting the matter for a jury trial. Ultimately, the case proceeded to trial on May 24, 2007. Three days prior to trial, however, Ellington filed a notice of alibi that provided the following:
 {¶ 10} "Defendant was at work as a home health care provider, providing services to client, Mary Rowe.
 {¶ 11} "Previously identified witness Philip Page will be called as a defense alibi witness."
 {¶ 12} The State filed an objection to Ellington's notice of alibi and a motion in limine on May 22, 2007, contending that the notice failed to satisfy the specificity and timeliness requirements of Crim.R. 12.1. First, the State pointed out that the notice only provided the address of the proposed alibi witness without any information pertaining to *Page 4 
Mary Rowe, with whom the appellant claims to have been at the time of the offense. Furthermore, the State argued that three days was insufficient time for it to investigate Ellington's alibi and identify potential information or witnesses that could be used on cross-examination at trial.
 {¶ 13} Ellington's defense counsel responded orally before the court to the State's objection, claiming that an alibi defense was known to both parties at the start of the case. Additionally, defense counsel argued that he had not intended to call Mary Rowe as an alibi witness because of her health. Instead, counsel stated that he identified Philip Page, Rowe's son, as an alibi witness because he was at Rowe's residence on the date of the offense and could allegedly testify that Ellington was there, too. At trial, this response was entered into the record. (Tr. at 24-26.)
 {¶ 14} On May 23, 2007, the trial court issued an order agreeing with the State that Ellington's alibi evidence should be excluded. Subsequently, the matter was tried before a jury. There, in lieu of an argument that Ellington was not present at the time of the offense, defense counsel asserted that Ellington did, in fact, throw the can of paint at the dog, but that her actions were not intended to harm the animal. In his opening argument, Ellington's attorney provided the following:
 {¶ 15} "And what we'll concede is, the dog got loose from the owner's yard. It was not leashed. It was not in any other manner controlled by the nephew. Even as Miss Musto indicated, he called for the dog, the dog didn't respond. He was unable to control the dog.
 {¶ 16} "The dog entered my client's yard, and we're not talking about the front yard. The dog had come all the way to the back yard and behind the house. *Page 5 
 {¶ 17} "Confronted with an unknown animal of unknown disposition, a paint can was thrown to chase the animal off. The lid on the paint can came open. The dog got covered in paint.
 {¶ 18} "The purpose here wasn't to torture the animal or in some way cruelly abuse the animal, but to chase off an unknown or possible threat." (Tr. at 7.)
 {¶ 19} Likewise, defense counsel made the following statements during his closing argument:
 {¶ 20} "At least one of the dogs, the dog in question today, Coey, would not respond to the owner's command. She [Ellington] chases the dog off. Now, yes, did she choose to throw the paint can at the dog to chase it off, yeah, okay she did. Now in the process of doing that, is that act so unjustifiable [sic] so unreasonable that you're gonna find it cruel as to this animal?
 {¶ 21} "* * *
 {¶ 22} "Miss Ellington had a right to run it off. She didn't damage the dog in doing that. She got paint on it. The dog required a bath. It needed to be washed.
 {¶ 23} "* * *
 {¶ 24} "Miss Ellington chased the dogs off. She chose to get the dogs out of her yard as opposed to tolerating their behavior." (Tr. at Pt. II, 4-5; 7.)
 {¶ 25} Furthermore, Ellington offered the testimony of only one witness on her behalf. Shirley Warren testified that she spoke with Ellington the day after the offense took place, and that she advised Ellington to take pictures of her driveway — the location where the paint was alleged to have been thrown. In spite of the trial court's exclusion order, Warren further testified that Ellington could not have been the offender because *Page 6 
she was not present when the incident occurred.
 {¶ 26} At the conclusion of the trial, Ellington was found guilty of cruelty against a companion animal, but not guilty of criminal damaging. This appeal followed.[1]
 {¶ 27} In her single assignment of error, Ellington argues that the trial court committed prejudicial error when it ordered that her alibi evidence should be excluded at trial.
 {¶ 28} We review a trial court's decision to exclude alibi testimony under an abuse of discretion standard. State v. Reed (2003),155 Ohio App.3d 435, 439, 801 N.E.2d 862. An abuse of discretion constitutes more than an error in judgment; instead, it demonstrates that the trial court's attitude was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481,450 N.E.2d 1140.
 {¶ 29} Crim.R. 12.1 provides that "[w]henever a defendant in a criminal case proposes to offer testimony to establish an alibi on his behalf, he shall, not less than seven days before trial, file and serve upon the prosecuting attorney a notice in writing of his intention to claim alibi. The notice shall include specific information as to the place at which the defendant claims to have been at the time of the alleged offense. If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant for the purpose of proving such alibi, unless the court determines that in the interest of justice such evidence should be admitted."
 {¶ 30} The purpose of the notice requirement in Crim.R. 12.1 is "`to protect the *Page 7 
prosecution from false and fraudulent claims of alibi, often presented by the accused so near the date of the trial as to make it nearly impossible for the prosecution to ascertain any facts as to the credibility of the witnesses, called by the accused.'" State v.Pittman (May 24, 2002), Montgomery App. No. 18944, 2002 WL 1042093, at * 3, quoting State v. Clinkscale (Dec. 23, 1999), Franklin App. No. 98AP-1586, 2000 WL 775607, at *4. However, alibi testimony should not be excluded "where no prejudice would accrue to the prosecution, where there is a demonstrable and excusable showing of mere negligence, or where there is good cause shown." State v. Smith (1985),17 Ohio St.3d 98, 17 OBR 219, 477 N.E.2d 1128, paragraph two of the syllabus. In other words, "when the alibi evidence does not surprise or otherwise prejudice the prosecution's case, and when it is apparent that the defense acted in good faith, the exclusion of alibi evidence can constitute an abuse of discretion." Clinkscale, 2000 WL 775607, at *4.
 {¶ 31} Here, Ellington contends that the trial court erred in excluding her alibi evidence because 1) the notice of alibi actually identified "the place at which the defendant claims to be at the time of the alleged offense," i.e., at work caring for Mary Rowe; 2) the State was not prejudiced because the alibi was initially known to all parties, and the alibi witness was previously identified, permitting the State to investigate his testimony for credibility; and 3) there was good cause for not filing a notice of alibi earlier, where defense counsel's first alibi witness was determined to be incapable of testifying, and where defense counsel was handling a heavy caseload at the same time he was preparing for Appellant's case.
 {¶ 32} We find no merit in this argument. First, Ellington failed to comply with the procedural requirements of Crim.R. 12.1. The rule specifically directs movants to file *Page 8 
their notice of an alibi "not less than seven days before trial" and with "specific information as to the place at which the defendant claims to have been at the time of the alleged offense." Neither was satisfied in the instant matter. Ellington waited until three days before the trial to file her notice of alibi, and, furthermore, failed to provide Mary Rowe's address as the place where she alleges to have been — "at work" only minimally describes her whereabouts, placing the burden on the State to obtain additional, specific information in order to conduct its investigation. See, e.g., State v. Russell (1985),26 Ohio App.3d 185, 187, 26 OBR 405, 499 N.E.2d 15 (affirming the trial court's exclusion of alibi evidence, where the notice of alibi was served upon the State two days before trial and where it stated merely that the defendant was in Cleveland, Ohio, with his mother and one other person at the time of the offense).
 {¶ 33} Additionally, due to the untimeliness and lack of specificity in Ellington's notice of an alibi, the trial court could certainly find that the State was prejudiced. Ellington argues that this prejudice was minimized by the fact that both parties were aware of the alibi defense, presumably because it was implicit in Ellington's denial of the charges. This reasoning, however, is flawed. Where, as here, the State is left unaware of the identity of the alibi witness until only days before trial, its ability to determine the credibility of such witness is clearly frustrated. A finding to the contrary would thwart the protective aim of Crim.R. 12.1. Moreover, Ellington's contention that the prosecution was aware of her alibi defense when the action began only leads us to conclude that the defense was also aware of this fact, and thus, should have been prepared to give the State timely notice. Likewise, advanced awareness of an alibi defense undermines Ellington's assertion that attempting to identify her alibi witness, coupled with handling a *Page 9 
heavy caseload, amounted to good cause that prevented compliance with Crim.R. 12.1. Lastly, we fail to see how Ellington was prejudiced by the trial court's exclusion of her alibi witness, when defense counsel admitted multiple times at the trial that his client was present during the incident, and that she had thrown the can of paint at her neighbor's dog as alleged by the State.
 {¶ 34} Accordingly, we find no abuse of discretion in the trial court's decision to exclude Ellington's alibi evidence. Appellant's single assignment of error is overruled, and the judgment of the trial court is affirmed.
DONOVAN, J., and VALEN, J., concur.
[1] On June 21, 2007, the trial court ordered that Ellington's sentence be stayed pending the outcome of the instant appeal. *Page 1